# INSURANCE COMPANY OF NORTH AMERICA v BOYLE, et al.

## Case No. 85-1116 CA

Fourth Judicial Circuit, Duval County

February 3, 1986

## APPEARANCES OF COUNSEL

**Glenn E. Cohen** for plaintiff/counterdefendant, Insurance Company of North America.

**Mitchel E. Woodlief, Wahl and Gabel,** for defendant/counterclaimant, William R. Boyle.

**Carl M. Stewart** for defendant, Atlantic National Bank.

## OPINION OF THE COURT

HENRY LEE ADAMS, JR., Circuit Judge.

### *PARTIAL SUMMARY JUDGMENT FOR DEFENDANT/ COUNTERCLAIMANT WILLIAM R. BOYLE*

This cause came on to be heard on Defendant/Counterclaimant's Motion for Summary Judgment. From the pleadings, Affidavits and record herein, the Court finds the following:

In 1979, Daniel Pizzutillo of Wildwood, New Jersey purchased a 1979 33' Pacemaker yacht, Hull Identification Number PAC33168M791. Shortly thereafter, he purchased a policy of insurance written by Insurance Company of North America. The terms of the policy protected the insured, from such risk as theft of the vessel.

On or about May 23, 1980, the 33′ Pacemaker yacht was stolen while docked in Wildwood, New Jersey. Shortly thereafter the insured submitted appropriate proof of claim forms to the Insurance Company of North America. On August 19, 1980, Insurance Company of North America, paid the full amount of the claim, $70,000 for the theft pursuant to the provisions of the contract of insurance in effect at that time.

On February 16, 1984, William R. Boyle, Defendant/Counterclaimant purchased a 1979 33′ Pacemaker fishing vessel from a third party. At the time of purchasing the vessel, Mr. Boyle received from the seller of the vessel a Florida Certificate of Title issued by the State of Florida to the seller for the subject vessel, with a Hull Identification No. PAC33248M791. which matched the one on the vessel. Mr. Boyle purchased the vessel for $40,000 and on that date, obtained a loan from Defendant, Atlantic National Bank of Jacksonville, for the purchase price. In order to secure financing from the Defendant Atlantic National Bank, Defendant/Counterclaimant Boyle was required to obtain coverage for the subject vessel and was issued same by the Insurance Company of North America, d/b/a Aetna Insurance Company on an all risk marine insurance policy no. YKR160391.

At the time of purchasing the vessel and obtaining the insurance Mr. Boyle was unaware that the vessel was stolen. The vessel was subsequently seized by the Florida Marine Patrol on September 18, 1984. The vessel has not been returned to Boyle. From the record herein, the Court specifically finds that the Defendant/Counterclaimant was an innocent purchaser for value.

### INSURABLE INTEREST

In Florida, an insurable interest is not determined by the concept of title but rather the insured has a substantial economic interest in the property. *Aetna Insurance Company v. King*, 265 So.2d 716, 718 (Fla. 1st DCA 1972). The parties hereto stipulated and the Court finds that because the vessel was stolen, Boyle has no legal or equitable title to the vessel. Consequently, the vessel will not be returned to him and he remains obligated to Defendant Atlantic National Bank of Jacksonville in the amount of $40,000.

Florida Statutes 627.405(2) defines "insurable interest" as:

"any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment."

Subsection (3) states:

**89**

"a measure of an insurable interest in property is the extent which the insured might be damaged by loss, injury, or impairment thereof."

Based on the above, the Court specifically finds that the Defendant/Counterclaimant William R. Boyle has an insurable interest in the subject vessel herein because of his substantial economic interest.

### LOSS OF VESSEL BY SEIZURE

The vessel herein was seized on September 18, 1984, by the State of Florida Marine Patrol. The vessel has not been returned to Defendant/Counterclaimant and without legal or equitable title to the stolen vessel its return is doubtful.

The Amended Declaration page of the insurance contract no. YKR160391, which is the subject matter of this action, describes the addition of the 1979 33' Pacemaker vessel herein. The value is stated at $40,000 with a $1,200 deductible. The Declaration Page is dated March 8, 1984 and the effective date of the insurance is stated on the Amended Declaration Page as February 16, 1984. The police is effective until February 1, 1986 and was in force and effect and on September 18, 1984, the date of the seizure herein. Under the "GENERAL PROVISIONS", Section I, 2(a)(2), "Insured property" is defined as:

"any yacht which you acquired ownership of during the policy period. You must notify us within fifteen (15) days of the time you acquired the yacht and pay an additional premium required".

The vessel was acquired during the ownership of the policy on February 16, 1984, and the insurance company was notified of same on the date. The vessel is covered under the terms of this insurance policy.

Section III, Part "A", Subsection (1) states:

"We will provide coverage for accidental direct physical loss or damages to your insured property as well as salvage charges, *except as specifically excluded in this policy.*"

In subsection (3), "EXCLUSIONS", the policy states:

"We do not provide property damage coverage against (a) wear and tear, gradual deterioration, weathering, or against insect, mold, vermin, or marine life damage; (b) wages or provisions furnished to master or crew; (c) the cost or replacing or repairing any item having a physical defect that causes damage to your insured property."

The other exclusions under the terms of the policy are contained in

90

Section II, "GENERAL LIMITATIONS AND EXCLUSIONS", Paragraphs 5 and 7. Paragraph 5 states:

> "*Intentional Acts*: there is no coverage under this policy for loss, damage, injury or loss of life as intentionally caused by any covered person."

Paragraph 7 of the same section states:

> "We do not provide any coverage for loss or damage due to: (a) War, including undeclared war, civil war, insurrection, rebellion, revolution, war-like act by military force of military personnel, destruction or *seizure for military purposes*, and including any consequence of these."

It is interesting to note that paragraph 7 is the only exclusion dealing with seizure for any purpose and that exclusion is limited to seizures for military purposes.

The insurance policy in question, covers the insured property against all accidental direct physical loss to the property except as specifically excluded in the policy. The policy sets out specific exclusions, including seizure of a vessel for military purposes. Nowhere does the policy specifically set out an exclusion for any other type seizure or for seizures by government or one of its agencies.

The seizure was an accidental direct physical loss as described in the insurance contract. As stated in *Aetna Insurance Company vs. Webb*, 251 So.2d 321, "It is generally held that the word "accident" and "accidental", as used in insurance contracts mean that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and foreseen." In *Webb*, the Court also stated that "the language of the policy is the language prepared by the draftsman for the insurance company, and if the insurance company wanted to exclude from coverage loss resulting from the negligence of third party, it could have very readily framed the clause and such wise to have done so." Here, if the insurance company wanted to exclude all seizures by a government from coverage, it could have done so. However, the only seizure excluded was that for a military purpose. The Court in *Webb*, further stated that "if there is an ambiguity in the language of the coverage, such ambiguity must be resolved against the insurance company that drafted the particular language in question, and in favor of the insured."

Defendant/Counterclaimant has employed a law firm to represent him in this action and is obligated to pay them a reasonable fee for their services. Pursuant to Section 627.428, *Florida Statutes*, Defen-

dant/Counterclaimant is entitled, as a party in damages, to a reasonable attorney's fees for prosecuting his claim.

The Court finds, therefore, that there is no genuine issue as to any material fact and the Defendant/Counterclaimant Boyle is entitled to partial summary judgment herein against the Plaintiff/Counterdefendant Insurance Company of North America, on the Counterclaim as a matter of law. Upon consideration, it is

ORDERED and ADJUDGED:

1. That the Defendant/Counterclaimant, William R. Boyle, be granted partial summary judgment.

2. That Defendant/Counterclaimant, William R. Boyle, shall have and recover from Plaintiff/Counterdefendant, $38,800.00 for partial compensatory damages together with interest at the legal rate from September 18, 1984, the date of the loss.

3. That the Defendant/Counterclaimant, William R. Boyle, shall have and recover as part of his damages, a reasonable attorneys fees, pursuant to Section 627.428, *Florida Statutes* from Plaintiff/Counterdefendant.

4. The Court will retain jurisdiction of this cause for the purpose of determining the amount of the Defendant/Counterclaimant's damages with regard to his entitlement of a reasonable attorney fees and for the purposes of entering an appropriate Order taxing cost, upon Motion and Notice by either party.